RECEIVED
2005 MAY 26 P 4: 05
DEBRA P. HACKETT, CLK
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

**KENITH BURDETT,**

**Plaintiff,**

**v.**

**BANK ONE, N.A., CHARTER ONE BANK, N.A., LUANNE MIXON, KEITH MIXON, et al.,**

**Defendants.**

**CASE NO.:** 2:05CV0499-DRB

**NOTICE OF REMOVAL**

Defendant JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A., ("Chase") files this notice to effectuate the removal of the above-styled action from the Circuit Court of Barbour County, Alabama, Eufaula Division, to the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1441 *et seq.*, on the basis of the following facts that demonstrate subject matter jurisdiction in this Court based on a federal question:

1. This action was commenced by plaintiff Kenith Burdett ("Burdett") in the Circuit Court of Barbour County, Alabama on April 21, 2005. Chase was served by certified mail on May 5, 2005. Copies of all process and pleadings filed in the state court are attached hereto as Exhibit A.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 because the action involves a federal question. The Complaint alleges claims of negligence and wantonness relating to Chase's alleged conduct in the origination and subsequent credit reporting of a series of student loans in the Plaintiff's name. These claims, although couched as state

common-law claims, necessarily invoke a federal statute; namely, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"). Thus, this action is removable to federal court because it could have been filed originally in this Court based on federal question jurisdiction. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over any remaining claims because they form part of the same case or controversy.

**FEDERAL QUESTION JURISDICTION**

3. Federal question jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1331 because: 1) Plaintiff asserts claims that are completely preempted by federal law, and 2) the resolution of Plaintiff's claims will necessitate the adjudication of substantial, disputed questions of federal law.

4. Although the Plaintiff's Complaint is couched in state law claims, application of two exceptions to the well-pleaded complaint rule reveals that the claims arise under federal law. The first exception is the doctrine of complete preemption. *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 393 (1987). Complete preemption occurs when a federal statute "wholly displaces" a state-law cause of action. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). When a federal statute completely preempts a state-law cause of action, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and may be removed under 28 U.S.C. § 1441(b). *Id*; *see also Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law."); *Caterpiller*, 482 U.S. at 393 ("If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope

of the federal cause of action necessarily 'arises under' federal law.") A federal statutory preemption provision that displaces any state causes of action in a specified field renders a claim federal, "notwithstanding the fact that state law would provide a cause of action in the absence of [the federal cause of action]." *Beneficial Nat'l Bank*, 539 U.S. at 7. The Court may examine the entire record to determine whether the real nature of a plaintiff's claim is federal when the plaintiff has by "artful pleading" attempted to defeat a defendant's right to a federal forum. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981).

5. The second exception provides that a plaintiff cannot avoid federal jurisdiction by "omitting to plead necessary federal questions in a complaint." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1 (1983). Although a plaintiff's cause of action may be created by state law, the case may nonetheless "arise under" the laws of the United States if the plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Id.* at 13. The issue is whether the right to recovery necessarily turns on the interpretation of federal law. *Id.*

## FEDERAL PREEMPTION

6. State law claims against a credit furnisher such as Chase that are based on allegations of identity theft and any ensuing inaccurate credit reporting are completely preempted by the FCRA. Congress passed the FCRA in 1968 to establish "reasonable procedures" for "meeting the [credit reporting] needs of commerce" and the banking industry "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §1681(b). Initially, the FCRA imposed requirements only upon consumer reporting agencies with respect to the contents and handling of

consumers' credit reports, and not upon credit card companies or lenders who furnished credit information about consumers to such bureaus. S. Rep. No. 104-185 at p. 49.

7. In September 1996, Congress passed the Consumer Credit Reporting Reform Act, which amended the FCRA. Pub. L. No. 104-208, 110 Stat. 3009. These amendments, which became effective in 1997, imposed new duties and liabilities on persons who furnish credit information to consumer reporting agencies, such as creditors and lending institutions, debt collection agencies, and credit processing companies. *See* 15 U.S.C. § 1681s-2. The term "furnisher of information" has been interpreted broadly to mean any entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA and Trans Union." *Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999).

8. The 1996 amendments to the FCRA added a provision that preempts state law claims against a defendant relating to its conduct as a furnisher of credit information. 15 U.S.C. § 1681t (b)(1)(F). This section provides in pertinent part:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specified state code sections].

9. The legislative history of the 1996 Amendments reflects that Congress debated whether to displace various state laws in favor of a national federal uniform standard of liability for accurate credit reporting and procuring and using credit reports. *Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 792-94 (N.D. Ill. 1999) (analyzing legislative history to determine whether to apply state law agency principles to impose liability on defendant company for its employee's wrongful acquisition of a credit report). The resulting 15 U.S.C. § 1681t(b)(1)(F), including the

8-year sunset provision, was a compromise with respect to the role of state law in those areas governed by the FCRA. As the legislative history reflects, the 1996 preemption provision in § 1681t(b)(1)(F) created a trial period for testing the effectiveness of uniform national regulation of the consumer credit industry:

> Acknowledging that the preemption debate had been "contentious," Representative Kennedy explained that "this compromise provision is the product of a careful effort to balance industry's desire for nationwide uniformity with States' vital interest in protecting their citizens . . .. The 8-year preemption mandated by this bill will test the viability of a uniform national standard. If after 8 years the Federal law is not adequately protecting consumers, then I would expect States to step in once again and do the job." 140 Cong. Rec. H9810; *see also id.* at H9810 (remarks of Rep. McCandless: "I think that 8 years is long enough to foster national uniformity, but not too long to stifle State ingenuity."); *id.* at H9811 (remarks of Rep. Thomas: "We have compromised on the preemption issue so companies will not have to comply with a patchwork of State laws."); *id.* at H9815 (remarks of Rep. Castle: "Equally as important, this compromise will not place an unfair regulatory burden on companies that provide credit to consumers . . .. This federal preemption will allow business to comply with one law on credit reports rather than a myriad of State laws).

*Id.* at 794. Based on this legislative history, Congress did not intend for the judiciary "to establish differing rules for subscribers based on the agency law in each forum." *Id.* Accordingly, the Court in *Kodrick* gave full preemptive effect to § 1681t(b)(1)(F) and declined to apply state common-law agency principles.

10. The plain language of § 1681t(b)(1)(F) reflects a manifest intent on the part of Congress to make all causes of action against credit furnishers that fall within the scope of this statutory provision federal in nature and, thus, removable to federal court. In addition, the 1996 amendments to the FCRA established a federal cause of action for consumers after a credit furnisher is put on notice through the bureaus of an alleged inaccuracy in a consumer's credit

file. § 1681s-2(b). Section 1681s-2(a), also added in the 1996 amendments, provides additional federal rights of action by certain federal agencies. This is another indication that Congress intended to displace state causes of action with purely federal causes of action and a federal enforcement scheme. The FCRA, and its subsequent amendment, known as the FACT Act (*see* ¶ 15), also set forth procedures and remedies governing these federal causes of action, *see, e.g.*, 15 U.S.C. § 1681o, 1681n, yet another indicator of complete preemption. *See Beneficial Nat'l Bank*, 539 U.S. at 8. Moreover, the legislative history reflects that Congress intended to establish, at least temporarily, a uniform national standard governing the conduct of credit furnishers.

11. Although none of the circuits appears to have applied § 1681t(b)(1)(F), several district courts have held that this provision totally preempts all state common law claims. *See, e.g., Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1322 (S.D. Ala. 2002) ("the plaintiff's state [tort] claims are entirely preempted by 15 U.S.C. § 1681t(b)(1)(F)"); *Hasvold v. First U.S.A. Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wy 2002) ("the FCRA preempts plaintiff's [defamation and invasion of privacy] claims against the defendant relating to it as a furnisher of information."); *Jamarillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) ("It is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies.' Any other interpretation would fly in the face of the plain meaning of the statute.").[1] Chase submits that this approach reflects the correct interpretation of the statute.

[1] The *Jaramillo* court subsequently reconsidered its decision with no published rationale. *Jaramillo v. Experian Information Solutions, Inc.*, 2001 WL 1762626, *1 (E.E. Pa. 2001).

12. Other district courts have taken a different approach to preemption of state claims under FCRA. This approach, known as the "temporal approach," endeavors to reconcile § 1681t(b) with an older provision of the FCRA -- § 1681h(e) -- which provides all entities subject to the FCRA with qualified immunity, or defensive preemption, to specified state tort claims if there is no evidence of intentional or willful conduct. *Woltersdorf v. Pentagon Federal Credit Union,* 320 F. Supp. 2d 1222, 1225-26 (N. D. Ala. 2004); *Riley*, 226 F Supp. 2d at 1324; *Malm v. Household Bank (SB), N.A.*, 2004 WL 1559370, *1, 6 (D. Minn. 2004); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 785-86 (W.D. Ky. 2003); *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 869 (M.D.La. 2003); *Aklagi v. Nationscredit Fin. Servs. Corp.,* 196 F. Supp. 2d 1186, 1194-95 (D. Kan. 2002); *Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F. Supp. 2d 150, 162-63 (D.P.R. 2002); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 930-931 (N.D. Ill. 2000). These decisions hold that state law tort claims are totally preempted by the newer § 1681t(b) if they involve conduct by a furnisher of credit information after that furnisher was made aware that the information was false or disputed by a consumer reporting agency. *See, e.g., Woltersdorf*, 320 F. Supp. 2d at 1225 (citing FCRA provisions 15 U.S.C. § 1618s 2(b)(1) and § 1681i (2)).

13. Section 1681s-2(b)(1) requires that, "upon notification of a dispute, a person who has furnished information to consumer reporting agencies must conduct an investigation of the information in dispute and provide the results of the investigation to the consumer reporting agencies." This is the triggering event for application of complete preemption of state law claims under the temporal approach to interpreting § 1681t(b). This statutory interpretation makes sense: It would be illogical to hold a credit furnisher liable before it knew, or had reason to know, that the credit information it was reporting contained inaccuracies.

14.  In this case, the triggering events under § 1681t(b) have occurred such that the Plaintiff's state law claims are completely preempted by federal law. *See* Exhibit B (Affidavit of Shelly Bowman). Thus, even if this Court were to adopt the more limited temporal approach rather than the total preemption approach in its interpretation of § 1681t(b),[2] the Plaintiff's claims are still subject to complete preemption.

15.  In addition, on December 4, 2003, 15 U.S.C. § 1681s-2(b)(1) of the FCRA was amended to add a new provision imposing certain additional duties on furnishers of credit information such as Chase in connection with investigations of consumer disputes. *See* Fair and Accurate Credit Transactions Act of 2003, Pub.L. No. 108-159, sec. 314(b), § 623(b)(1)(E), 117 Stat. 1952, 1995-96 ("FACT Act"). Significantly, the FACT Act reaffirmed and cemented Congress's intent to completely preempt all state causes of action relating to the responsibilities of furnishers of credit information, by making permanent the preemption provisions of § 1681t(b). Pub. L. 108-159, § 711(3). The FACT Act also added nine provisions imposing uniform national standards for preventing and mitigating identity theft, and expressly preempted any state laws governing such conduct. Pub. L. 108-159, § 711(2); *see* 18 U.S.C. § 1681t(b)(5). The legislative history of the FACT Act reflects that the purpose of the statute was to "assist the victims of identity theft, and ensure the operational efficiency of our national credit system by creating a number of preemptive national standards." 149 Cong. Rec. H12214 (Nov. 21, 2003) (joint explanatory statement of the conference committee). As Representative Oxley explained:

> The final FCRA legislation [FACT Act] states that no requirement or prohibition may be imposed under the laws of any State with respect to the conduct required under the nine specific provisions

---

[2] Some courts have adopted a third approach that interprets § 1681t as applying solely to state statutory claims rather than tort claims. *See, e.g., Nelski v. Ameritech*, 2004 WL 1460001, *1 (Mich. App. 2004); *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335, 1341-42 (N.D. Ala. 2004). The plain language of § 1681t does not provide that it relates to statutes only, however. Moreover, the FACT Act's amendments to the FCRA (discussed in ¶ 15) and legislative history do not support this interpretation of the statute.

> included in the new identity theft preemption provision of the law. Accordingly, States cannot act to impose any requirements or prohibitions with respect to the conduct addressed by any of these provisions or the conduct addressed by any of the federal regulations adopted under these nine provisions. All of the rules and requirements governing the conduct of any person in these areas are governed solely by federal law and any State that attempts to impose requirements or prohibitions in these areas would be preempted.

1349 Cong. Rec. H12215 (Nov. 21, 2003) (statement of Rep. Oxley).

16. The issue presented here is one of complete preemption. This question is jurisdictional in nature and focuses on whether Congress intended to make the plaintiff's cause of action federal and removable even though the plaintiff's complaint alleges state law claims. The plain language of the 1996 and 2003 amendments to the FCRA and the accompanying legislative history demonstrate the Congressional intent to preempt completely state law claims such as those asserted against Chase as a credit furnisher in this case.[3]

17. The Eleventh Circuit has held that an FCRA claim by a plaintiff gives rise to federal question jurisdiction. *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1264 (11th Cir. 1998) (the FCRA "does not provide evidence that Congress intended to preclude removal"). Thus, removal of this action is proper.[4]

---

[3] Chase is not asserting defensive preemption, which is substantive in nature and must be decided by a court having jurisdiction.

[4] One district court in Alabama has interpreted the grant of concurrent federal and state jurisdiction in the FCRA -- § 1681p -- to mean that claims couched in terms of state law are not removable, even if in reality they state a claim under the FCRA. *Watkins v. Trans Union*, 118 F. Supp. 2d 1217 (N.D. Ala. 2000) (Acker, J.). Chase respectfully submits that this holding is distinguishable because it was decided prior to the FACT Act; therefore, the *Watkins* court did not have the benefit of the most recent statutory language and legislative history as signals of Congressional intent. *See also Shane v. Fleet Bank*, 132 F. Supp. 2d 953 (M.D. Ala. 2001) (similarly distinguishable). Moreover, in *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court affirmed the Eleventh Circuit's holding that the grant of concurrent jurisdiction in the Fair Labor Standards Act does not bar removal of a suit stating a FLSA claim from state to federal court. Section 1441(a) requires any exception to the general removability rule to be "expressly provided by Act of Congress." *Id.* at 1883. Like the FLSA, the FCRA does not contain any such express provision prohibiting removal. Thus, if the complete preemption or substantial federal question exception to the well-pleaded complaint rule applies such that the Plaintiff's Complaint

## SUBSTANTIAL FEDERAL QUESTION

18. The Plaintiff's Complaint in the state lawsuit (hereinafter "State Identity Theft Case") is couched in terms of state law. Chase submits that even though the Plaintiff has couched the Complaint in this manner, the real nature of the claim is federal. *See In re Carter*, 618 F. 2d 1093 (5th Cir. 1980).[5]

19. The federal nature of the Plaintiff's claims in the State Identity Theft Case is evidenced not only by the allegations in the Complaint and federal law governing those allegations, but also by a federal lawsuit, Case No. 2:05 cv 377-F in the U.S. District Court for the Middle District of Alabama, filed by the Plaintiff four days after initiating his state lawsuit.[6] The federal Complaint alleges in more detail claims against Chase Manhattan Bank USA, N.A., (an affiliate of the Chase entity named in the State Identity Theft Case and a wholly owned subsidiary of the same parent company) arising from alleged identify theft by the Mixons (hereinafter "Federal Identity Theft Case") and expressly asserts claims under the FCRA. (Exhibit C, Counts One through Three). The Federal Identity Theft Case alleges that student loans (the same loans at issue in the State Identity Theft Case), among other accounts, were procured by identity theft and wrongfully reported. (Exhibit C, ¶¶ 23, 48, 136, and Count Five). The Federal Identity Theft Case seeks damages for an alleged adverse impact on the Plaintiff's credit resulting from the Mixons' identity theft, just like the State Identity Theft Case. In fact, the preliminary statements of the two Complaints are essentially identical, as are the allegations

---

invokes the FCRA, the case is removable under § 1441(a) and § 1681p. *See Chilton v. Savannah Foods & Industries, Inc.*, 814 F. 2d 620, 622-23 (11th Cir. 1987).

5 In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6 A copy of the federal Complaint is attached hereto as Exhibit C.

of activity by the Mixons giving rise to the suit, the state law claims for negligence and wantonness, and the Plaintiff's alleged damages.

20.  The Plaintiff's Complaint in this lawsuit attempts to carve out one or more purported state law claims, presumably to keep part of the Plaintiff's case in Barbour County Circuit Court. This effort to parse different aspects of the same claims into two separate cases should be rejected because the Plaintiff's allegations, claims, and damages in both suits directly address alleged identity theft and inaccurate credit reporting involving 15 student loans, which necessarily implicates the FCRA. "[A] long line of cases disallows manipulations by plaintiffs designed to create or avoid diversity jurisdiction . . ." *Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69 (1941). Just as federal courts may assert jurisdiction where a plaintiff seeks to hide the true citizenship of the parties, so, too, the courts may assert jurisdiction where a plaintiff cloaks a necessarily federal claim in state-law terms. The Federal Identity Theft Case demonstrates that common and necessary elements of the Plaintiff's claims are federal even though the Plaintiff makes no mention of the FCRA in the State Identity Theft Case. *See, e.g., Kane v. Guar. Residential Lending, Inc.*, 2005 WL 1153623, (E.D.N.Y. 2005). In *Kane*, for example, the court held that the plaintiffs' claims (originally brought in state court) for negligence, wantonness, and defamation arising from defendants' alleged inaccurate credit reporting clearly implicated the FCRA. *Id.* at 20. The court recognized that a proper analysis of such claims necessarily involved an examination of whether the plaintiffs had any viable causes of action under this federal statute. *Id.; see also Williams v. Metropolitan Life Ins. Co.*, 1994 WL 529880, *1, 2 (S.D. N.Y. 1994) (even though the Complaint's second claim was framed in terms of state common law negligence and made no reference to the FCRA, the FCRA provides the exclusive

cause of action for the Plaintiff's claim). The legal parameters governing Chase's conduct in the context of alleged identity theft and credit reporting obligations are surely federal.

21. In both his State Identity Theft Case and his Federal Identity Theft Case, the Plaintiff alleges that Chase or its agents enabled the Mixons to commit identity theft. As a result, Chase allegedly reported inaccurate information that appeared in Plaintiff's credit files, which damaged his credit rating. The juxtaposition of these two complaints reveals that the Plaintiff's State Identity Theft Case alleges claims federal in nature and involves substantial questions of federal law that are disputed by the parties.

22. In addition, according to the Complaint, the impetus behind the State Identity Theft Case was the Plaintiff's discovery of student loans and credit card accounts that did not belong to him based on a review of his credit reports. The Plaintiff casts his claim against Chase in terms of negligence and wantonness, which are state law torts. To recover for such torts, the Plaintiff must prove that Chase owed a legal duty to him and breached that duty. The Plaintiff must also prove damages as an element of his tort claims. He cannot prove any of these elements -- that he was owed a legal duty by Chase with respect to the alleged identity theft or was damaged through improper credit reporting -- without invoking the FCRA. Chase's federal statutory duties under the FCRA and the statute's remedial provisions have to be applied to determine liability under either of Plaintiff's state law claims, which gives rise to federal jurisdiction.

23. First, Alabama law has not recognized a duty on the part of a credit furnisher such as Chase to prevent or detect identity theft. *See Smith v. AmSouth Bank*, 892 So. 2d 905, 908-11 (Ala. 2004) (rejecting plaintiff's contention that the defendant bank had a common-law duty to the general public to meet a commercially reasonable standard of care in opening bank

accounts). Proof of wantonness, the Plaintiff's second claim against Chase, requires that the Plaintiff first establish elements of negligence. Thus, the duties that underly the Plaintiff's claims necessarily arise from the FCRA – the duty to use reasonable procedures to detect identity theft and correctly report credit information once the credit furnisher has been put on notice of identity theft.[7]

24. Second, Plaintiff must prove damages to recover on his claims of negligence and wantonness. He seeks to recover actual damages for loss of credit and impact on his credit standing and punitive damages. Because the FCRA and the FACT Act amendments govern the reporting obligations of a credit furnisher like Chase, Plaintiff could not recover damages for inaccurate credit reporting without proving that Chase's conduct in reporting the student loan accounts and/or credit card accounts contravened the FCRA and the FACT Act.

## OTHER REMOVAL REQUIREMENTS

25. No previous application has been made for the relief requested herein.

26. Co-defendant Luanne Mixon has consented to the removal of this action. *See* Exhibit D.

27. The court file indicates that co-defendant Keith Mixon, a Florida resident, was served by certified mail on April 26, 2005. Mr. Mixon has submitted an affidavit, however, that service of process was not perfected because he does not have sufficient minimum contacts with the State of Alabama to be subject to the state's long-arm statute. *See* Exhibit A, p. 6. Thus, for purposes of this removal, Mr. Mixon has not been properly served and need not join in or consent to the removal. *See Hooper v. Albany International Corp.*, 149 F. Supp. 2d 1315, n.2

[7] The Plaintiff's Complaint refers to negligent training and supervision of Chase's employees or agents. Again, the duty underlying this type of claim is a duty to prevent or correct identity theft. There is no such duty under state law; the duty is created and governed by federal law.

(M.D. Ala. 2001) (holding that only properly served defendants must consent to removal). Mr. Mixon has entered a special appearance to consent to the removal of this case, however, which preserves his objections to service and jurisdiction. *See* Exhibit E.

28. Similarly, the court file indicates that co-defendant Charter One Bank, an entity alleged to be based in Delaware, was served by certified mail on April 26, 2005. The service package was directed to The Corporation Company, presumably as Charter One Bank's agent for service of process. Upon receipt of the Summons and Complaint directed to Charter One Bank, The Corporation Company immediately sent a letter to the Clerk's office indicating that it could not accept service on behalf of Charter One Bank. *See* Exhibit A, p. 9. As a result, Charter One Bank has not been served and need not join in or consent to the removal. Charter One has entered a special appearance to consent to the removal of the case, however. (Exhibit F).

29. The court file reflects that Charter One Bank and Keith Mixon were the first defendants served with the Summons and Complaint and that they were served by mail on April 26, 2005.[8] Thus, although service was not effective for these defendants, this Notice of Removal is timely, having been filed within thirty (30) days after the court file reflects initial service on a defendant on April 26. 28 U.S.C. §1446(b); Fed. R. Civ. P. 6(a).

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because it is the district and division embracing the place where the state court action is pending.

31. On May 19, 2005, Mr. Mixon filed a special notice of appearance contesting jurisdiction and alleging inadequate service of process in the state court action. No further proceedings have been had in the state court action.

32. This Notice of Removal is being served on all named parties to the removed case.

---

[8] As previously discussed, service was insufficient with respect to both of these defendants.

33. A written Notice of Filing of Notice of Removal, together with a copy of this Notice, will be filed with the Clerk of Court for the Circuit Court of Montgomery County Alabama, and will be served upon the Plaintiff, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Chase respectfully requests that this case be removed from the Circuit Court of Barbour County, Alabama, Eufaula Division, to the United States District Court for the Middle District of Alabama.

Date: May 26, 2005.

William D. Jones (JON016)

Lee M. Pope (POP008)

Helen Kathryn Downs (DOW019)

Attorneys for Defendant
JP Morgan Chase Bank, N.A.

**JOHNSTON BARTON PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203-2618
Telephone: (205) 458-9497
Facsimile: (205) 458-9500
E-mail: wdj@jbpp.com
lmp@jbpp.com
hkd@jbpp.com

**OF COUNSEL**

**CERTIFICATE OF SERVICE**

This is to certify that I have served the foregoing on all counsel of record by depositing a copy of the same in the United States mail, properly addressed and first-class postage prepaid, on this the 26th day of May, 2005, to the following:

James D. Patterson, Esq.
Earl P. Underwood, Esq.
Law Offices of Earl P. Underwood, Jr.
21 South Section Street
P.O. Box 969
Fairhope, AL 36533

Jim S. Calton, Jr., Esq.
Calton & Calton
226 East Broad Street
Eufaula, AL 36027

Herman Cobb, Esq.
Leon A. Boyd, V, Esq.
Cobb, Shealy, Crum & Derrick, P.A.
Post Office Box 6346
Dothan, Alabama 36302

Ms. Luanne Mixon
Post Office Box 388
Pelham, Alabama 35124-0388

Helen Kathryn Downs
Of Counsel

W0511600.2DOC